# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ALEXSAM, INC.,
*Plaintiff*,

v.

AETNA, INC.,
*Defendant.*

No. 3:19-cv-01025 (VAB)

## RULING AND ORDER ON PENDING MOTIONS

AlexSam, Inc. ("Plaintiff" or "AlexSam") sued Aetna, Inc. ("Aetna" or "Defendant") for patent infringement related to Claims 32 and 33 of United States Patent Nos. 6,000,608 (the "'608 Patent"). Second Am. Compl., ECF No. 57 (Dec. 6, 2019). Aetna moved to dismiss the Second Amended Complaint. *See* Mot. to Dismiss, ECF No. 65 (Jan. 10, 2020).

On September 11, 2020, the Court granted Aetna's motion to dismiss and allowed AlexSam until October 9, 2020 to move for leave to file an amended pleading to the extent the deficiencies identified by the Court could be addressed. Ruling and Order on Mot. to Dismiss, ECF No. 96 (Sept. 11, 2020) ("Dismissal Order").

AlexSam now has moved for reconsideration of the Court's Dismissal Order. Notice of Mot. for Reconsideration of the Ct.'s Order Granting Def.'s Mot. to Dismiss, ECF No. 101 (Sept. 18, 2020) ("Mot. Reconsideration"). AlexSam also has moved to amend or correct the Complaint, Pl.'s Mot. for Leave to File a Third Am. Compl., ECF No. 104 (Oct. 9, 2020) ("Mot. Amend"), and has filed a supplement to the motion to amend, Suppl. to Pl.'s Mot. for Leave to File a Third Am. Compl., ECF No. 106 (Oct. 30, 2020) ("Suppl. Mot. Amend").[1] Finally,

---

[1] The Court construes the supplemental motion to amend as the proposed Third Amended Complaint, and therefore considers it alongside AlexSam's motion to amend.

AlexSam has moved the Court to take judicial notice of certain evidence relating to its motion for reconsideration. Pl.'s Req. for Judicial Notice in Supp. of its Mot. for Reconsideration, ECF No. 108 (Nov. 4, 2020) ("Mot. for Judicial Notice").

Aetna has opposed each of AlexSam's motions. *See* Def. Aetna Inc.'s Opp'n to Pl. AlexSam Inc.'s Mot. Seeking Reconsideration and Other Relief, ECF No. 103 (Oct. 9, 2020) ("Def. Opp'n Reconsideration"); Def. Aetna Inc's Opp'n to Pl. AlexSam, Inc.'s Mot. for Leave to File a Third Am. Compl., ECF No. 107 (Oct. 30, 2020) ("Def. Opp'n Amend"); Def. Aetna Inc.'s Opp'n to Pl. AlexSam, Inc.'s Req. for Judicial Notice in Supp. of its Mot. for Reconsideration, ECF No. 109 (Nov. 9, 2020) ("Def. Opp'n Notice").

AlexSam has replied to Aetna's opposition to its motion for reconsideration and motion to amend the Complaint. Pl.'s Reply in Supp. of Mot. for Reconsideration of the Ct.'s Order Granting Def.'s Mot. to Dismiss, ECF No. 105 (Oct. 23, 2020) ("Reconsideration Reply"); Pl.'s Reply in Further Supp. of Its Mot. for Leave to File a Third Am. Compl., ECF No. 110 (Nov. 13, 2020) ("Amend Reply").

Aetna also has moved to strike the exhibits to AlexSam's reply to Aetna's opposition to the motion to amend or, in the alternative, to file a sur-reply in opposition. Def. Aetna Inc.'s Mot. to Strike, or in the Alternative, for Permission to File a Sur-Reply in Opp'n to Pl. AlexSam Inc.'s Mot. for Leave to File a Third Am. Compl., ECF No. 111 (Nov. 18, 2020); Def. Aetna Inc.'s Mem. of L. in Supp. of its Mot. to Strike, or in the Alternative, for Permission to file a Sur-Reply in Opp'n to Pl. AlexSam Inc.'s Mot. for Leave to File a Third Am. Compl., ECF No. 112 (Nov. 18, 2020) ("Mot. Strike").

For the foregoing reasons, the Court will enter the following orders:

AlexSam's motion for reconsideration will be **DENIED**, and to the extent the motion set

forth a cognizable motion to amend, that motion will be **DENIED as moot** in light of AlexSam's later motion to amend;

AlexSam's motion for judicial notice will be **DENIED**;

AlexSam's motion for leave to amend will be **DENIED** without prejudice to renewal to the extent that AlexSam can file, by **August 20, 2021**, a motion to amend the Complaint that addresses the deficiencies in the Court's Dismissal Order and includes as an exhibit a proposed Third Amended Complaint;

AlexSam's supplemental motion for leave to amend will be **DENIED**; and

Aetna's motion to strike will be **DENIED** without prejudice to renewal.

## I.   STANDARD OF REVIEW[2]

### a.  Motion for Reconsideration

Under Federal Rule of Civil Procedure 59(e), a party may move to "alter or amend a judgment . . . no later than 29 days after the entry of judgment." Fed. R. Civ. P. 59(e). Courts consider a motion made under Rule 59(e) to be a motion for reconsideration. *See Krohn v. N.Y.C. Police Dep't*, 341 F.3d 177, 179 (2d Cir. 2003) (noting that a party timely filed for reconsideration under Fed. R. Civ. P. 59(e) and 60(b)).

"Reconsideration motions are 'a mechanism for extraordinary judicial relief invoked only if the moving party demonstrates exceptional circumstances.'" *Wachovia Mortg., FSB v. Toczek*, 841 F. App'x 267, 272 (2d Cir. 2021) (quoting *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008)). Indeed, "[t]he standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be

---

[2] The Court assumes familiarity with the underlying factual and procedural background of this case, also recited in the Court's Dismissal Order.

expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) ("The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." (internal quotation marks omitted)); D. Conn. L. Civ. R. 7(c) ("Motions for reconsideration shall not be routinely filed and shall satisfy the strict standard applicable to such motions. Such motions will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order"). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257.

"A motion for reconsideration is committed to the sound discretion of the court." *Nygren v. Greater N.Y. Mut. Ins. Co.*, No. 3:07-cv-462 (DJS), 2010 WL 3023892, at *2 (D. Conn. Aug. 2, 2010); *see also Lesch v. United States*, 372 F. App'x 182, 182 (2d Cir. 2010) ("The standard of review of a district court order granting or denying a motion for [reconsideration] is whether the order constituted an abuse of discretion." (citing *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 132 (2d Cir. 1999))).

**b. Motion to Amend**

Under Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it; (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." Fed.

R. Civ. P. 15(a)(2).

The district court has broad discretion to decide a motion to amend. *See Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998). If a court chooses to deny leave to amend, however, it must give some "justifying reason" for doing so. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons for denying leave to amend include "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Id.*; *see also Lucence v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss [under] Fed. R. Civ. P. 12(b)(6)").

But where a party seeks leave to amend after the deadline to amend pleadings has passed, the Court has greater discretion to deny leave to amend. *See Lyddy v. Bridgeport Bd. of Educ.*, No. 3:06-cv-1420 (AHN), 2008 WL 5117679, at *1 (D. Conn. Dec. 4, 2008) ("In other words, when the court issues a pretrial scheduling order [under] Fed. R. Civ. P. 16 that establishes a time table for amending pleadings, a plaintiff's ability to amend the complaint is governed by Rule 16, not Rule 15(a).") (citing *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *Carnrite v. Granada Hosp. Grp. Inc.*, 175 F.R.D. 439, 446 (W.D.N.Y. 1997)). In these cases, a moving party may be required to demonstrate that there is "good cause" both to amend the scheduling order and to amend their pleading. *See Parker*, 204 F.3d at 340 ("[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good

cause."). "[A] finding of 'good cause' depends on the diligence of the moving party." *Id.*

In exercising their discretion under Rule 16(b), courts "also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner*, 496 F.3d at 243; *see also Lacher v. C.I.R.*, 32 F. App'x 600, 603 (2d Cir. 2002) (noting that undue prejudice to the opposing party is "typically the most important consideration in evaluating a motion to amend a pleading").

### c. Motion to Strike

Under Federal Rule of Civil Procedure 12(f), the Court "may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Resolution of a 12(f) motion is within the discretion of the district court, and such motions are generally disfavored and should be infrequently granted. *Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 15-16 (D. Conn. 2013). Indeed, the Second Circuit has long held that courts "should not tamper with the pleadings unless there is a strong reason for so doing." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). Thus, the party moving to strike "bears a heavy burden" and ordinarily must show that "(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the issues in the case; and (3) permitting the allegations to stand would result in prejudice to the movant." *Tucker*, 936 F. Supp. at 16.

## III.   DISCUSSION

The Court will discuss the motion for reconsideration, the motion to amend, the motion for judicial notice, and the motion to strike in turn.

### A.  The Motion for Reconsideration

AlexSam sets forth several primary arguments as to why the Court should reconsider its

Dismissal Order. *See* Mot. Reconsideration.

First, AlexSam argues that "[t]he Court's finding that the MasterCard Agreement provided coverage for Aetna's [allegedly] infringing activities is in error." *Id.* at 7 (emphasis omitted). In AlexSam's view, the Court's conclusion that the alleged acts of patent infringement fell within the scope of the MasterCard Agreement constitutes a "manifest error of law and fact." *Id.* (citing *MCI Healthcare, Inc. v. United Health Grp., Inc.*, No. 3:17-cv-01909 (KAD)). Specifically, AlexSam argues that "Aetna's accused products are not 'licensed transactions' under the MasterCard agreement," *id.* at 7-10 (emphasis omitted); that "whether the MasterCard agreement terminated early, as MasterCard contends, remains undecided," *id.* at 10-12 (emphasis omitted); and that "the Court improperly resolved factual issues, including a stated license defense, on a motion to dismiss," *id.* at 12-14.

Aetna argues that AlexSam has not set forth anything "that the Court overlooked – [t]he *sine qua non* of reconsideration," but instead is "trying to relitigate issues addressed in the briefing on the Motion to Dismiss, and the Court's [Dismissal] Order." Def. Opp'n Reconsideration at 4-5 (emphasis and citations omitted). Aetna argues further that "[t]he Court did not commit error, much less 'clear error,' in dismissing AlexSam's SAC [Second Amended Complaint," nor did the Dismissal Order "create 'manifest injustice'" such that reconsideration of this issue is warranted. *Id.*

The Court agrees.

As an initial matter, AlexSam's arguments as to whether Aetna's products are "licensed transactions" under the MasterCard Agreement, and that the MasterCard Agreement's termination date should be resolved before dismissal, already were raised in AlexSam's briefing opposing the motion to dismiss. *See, e.g.*, AlexSam, Inc.'s Opp'n to Def. Aetna Inc.'s Mot. to

Dismiss the Second Am. Compl., ECF No. 77, at 9-14 (Apr. 30, 2020) ("MTD Opp'n")

(contending that Aetna's motion to dismiss was premature because "several threshold questions,"

including "when . . . the MasterCard Agreement terminate[d]," whether "Aetna [was] a

sublicensee under the MasterCard Agreement," and the "scope of [the] coverage" "[i]f Aetna is a

sublicensee," needed to be resolved through discovery). These arguments were fully considered

by the Court in its order dismissing AlexSam's Second Amended Complaint. *See, e.g.*, Dismissal

Order at 17 (referencing AlexSam's claims against Aetna related to the MasterCard networks,

specifically AlexSam's argument that there are "unanswered threshold questions that must be

answered," including "(1) when did the MasterCard Agreement terminate?; (2) is Aetna a

sublicensee under the MasterCard Agreement? and (3) [i]f Aetna is a sublicensee, then what is

the scope of its coverage?"); *id.* (referencing AlexSam's claim that "Aetna's argument that its

MasterCard Accused Products are covered completely by the MasterCard Agreement is incorrect

and premature"); *id.* (referencing AlexSam's claim that "Aetna's MasterCard Accused Products

do not meet the requirements to be a Licensed Transaction under the MasterCard Agreement");

*id.* at 20 (determining that any transaction covered by Claim 32 or 33 "taking place over the

MasterCard network" would be "automatically 'deemed sublicensed,'" and "[b]ecause the phrase

'value chain' incorporates these transactions, they fall within the scope of a sublicense").

   AlexSam attempts to revive its argument that "Aetna's accused products are not 'licensed

transactions' under the MasterCard Agreement," Mot. Reconsideration at 8 (emphasis omitted),

by referring the Court to Paragraph 1.3 of the MasterCard Agreement and quoting select portions

of the Court's hearing on the motion to dismiss, specifically a statement from Aetna's counsel

summarizing the Complaint and a statement from AlexSam's counsel contending that the

definition of a "licensed transaction" could not extend to the card at issue in this matter. *Id.* at 9-

10. None of this allegedly additional support, however, represents a "controlling decision[] or data" that the Court overlooked, *Shrader*, 70 F.3d at 257; or an "intervening change of controlling law[] [or] the availability of new evidence," *Virgin Atl. Airways, Ltd.*, 956 F.2d at 1255, that would warrant reconsideration.

To the extent AlexSam argues that the Court's decision that the alleged acts of patent infringement fall within the scope of the MasterCard Agreement is factual or legal error, based on the additional support it provides, any such potential error is not so "clear," nor potential injustice so "manifest," to compel the Court to reconsider its conclusion as to this issue in its order of dismissal. *See id.*; *see also Talyosef*, 2020 WL 3064229, at *3 ("In the context of a motion for reconsideration, 'manifest injustice' is defined as an error committed by the trial court that is direct, obvious, and observable." (quoting *Corpac v. Rubin & Rothman, LLC*, 10 F. Supp. 3d 349, 354 (E.D.N.Y. 2013)); *Corsair Special Situations Fund, L.P. v. Nat'l Res.*, 595 F. App'x 40, 44 (2d Cir. 2014) ("The manifest injustice standard is, by definition, deferential to district courts and provide[s] relief only in the proverbial rare case.")).

Moreover, even if this Court construes AlexSam's arguments on reconsideration as in some way distinct from the arguments raised by AlexSam in its motion to dismiss briefing, AlexSam has offered "no reason for [its] failure to raise the[se] arguments," and "a judgment in a civil case does not constitute 'manifest injustice' where the movant's arguments for relief were available to the [party]" and the party "proffer[s] no reason for [its] failure to raise" them. *Mirlis v. Greer*, No. 3:18-cv-2082 (MPS), 2021 WL 1711649, at *3 (D. Conn. Apr. 30, 2021) (citing *In re Johns-Manville Corp.*, 759 F.3d 206, 219 (2d Cir. 2014)) (second and fifth alterations in original) (internal quotation marks omitted); *see also Corsair Special Situations Fund, L.P.*, 595 F. App'x at 44 ("Where a party with all the necessary time and resources fails to raise an obvious

9

challenge to a writ of garnishment, we do not find the imposition of a higher monetary judgment than the party deems appropriate to constitute a 'manifest injustice.'"); *Mirlis*, 2021 WL 1711649, at *3 (denying motion for reconsideration where the party attempted to "offer evidence that was indisputably available to her during the litigation" and did not "demonstrate[] that the [evidence] w[as] unavailable to her" or "that she could not have obtained the documents before judgment entered").

AlexSam's argument that the Court's failure to "resolve the threshold issue of whether the MasterCard Agreement is valid and enforceable, including whether any license coverage could apply for the entire damages period" constitutes "manifest injustice" fails for similar reasons. Mot. Reconsideration at 11-12. The Court considered this argument in the Dismissal Order, noting AlexSam's contention that the termination date of the MasterCard Agreement had not been decided, *see* Dismissal Order at 17, but nonetheless concluding that "the relevant transactions on multifunction cards provided by Aetna fall within the scope of a sublicensing agreement with MasterCard, and nothing in AlexSam's Second Amended Complaint requires a different result," *id.* at 20. And while AlexSam argues that "the issue of whether Aetna's accused products are 'Licensed Transactions' is irrelevant if the MasterCard Agreement was terminated during the period of enforceability of the AlexSam Patents," Mot. Reconsideration at 11, and suggests that "it is manifestly unjust for the Court to not resolve the threshold issue of whether the MasterCard Agreement is valid and enforceable," this conclusory statement, without more, does not represent an argument that would "reasonably be expected to alter the conclusion reached by the [C]ourt," *Shrader*, 70 F.3d at 257.

AlexSam's attempted resuscitation of each of these previously-raised arguments, already addressed by the Court, is best viewed as a second bite at the apple, an attempt to "relitigate an

issue already decided."[3] *Id.* And where "the moving party seeks solely to relitigate an issue already decided, the court should deny the motion for reconsideration and adhere to its prior decision." *Morneau v. Connecticut*, 605 F. Supp. 2d 372, 373 (D. Conn. 2009); *see also 4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 216 (2d Cir. 2019) ("A Rule 59(e) motion 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'").

As to AlexSam's argument that the Court "improperly resolved factual issues, including a stated license defense, on a motion to dismiss," Mot. Reconsideration at 12 (emphasis omitted), this too fails. AlexSam primarily relies on a handful of district court cases from across the country to argue that resolution of issues pertaining to express and implied licenses, is "procedurally [im]proper at this time, and . . . requires resolution of fundamental" questions of fact. Mot. Reconsideration at 13-14 (collecting cases). In AlexSam's view, "[w]hether the license agreement at issue is express or implied, the issue is still premature at the motion to dismiss stage." *Id.* at 13.

As an initial matter, while AlexSam argues that "Aetna did not cite any authority for the proposition that a court can resolve the issue of an express or implied license on a motion to dismiss," *id.* at 12, AlexSam fails to note that it, too, had an opportunity to argue in opposition to the motion to dismiss that any issues as to express and implied licenses, both of which were raised by Aetna, were procedurally improper at the motion to dismiss stage. AlexSam, in fact, raised this argument in similar form in its opposition to the motion to dismiss:

---

[3] Because the Court finds that reconsideration is not warranted on this basis, it need not, and does not, address Aetna's argument as to AlexSam's treatment of the alleged 2007 amendment of Section 1.3 of the MasterCard Agreement. *See* Def. Opp'n Reconsideration at 4-5. The Court, however, reminds the parties that though it will give "the benefit of the doubt in this instance," "candor in [the] briefs" is essential, and the parties are "cautioned to exercise great[] care to ensure that [their] briefs accurately set forth the relevant facts going forward." *Morales v. Berryhill*, No. 3:17-cv-0927 (MPS), 2018 WL 3748159, at *5 (D. Conn. Aug. 7, 2018).

> **<u>Aetna's Arguments Related To The MasterCard Agreement Are Procedurally Premature.</u>**
>
> Under the Iqbal/Twombly standard, the Court should accept all of Plaintiff's allegations as true. Here, AlexSam has alleged that Aetna is operating and committing acts of infringement without a license. *See* Dkt. No. 57. Regardless of whether Aetna is a sublicensee for any Licensed Transactions, which AlexSam contends it is not, AlexSam has no affirmative obligation to plead facts negating Aetna's expected (not yet pled) affirmative defense based on the MasterCard Agreement. *See Construction Cost Data, LLC v. Gordian Grp., Inc.*, No. 4:16-cv-114, 2017 WL 2266993, *6 (S.D. Tex. Apr. 24, 2017), *adopted*, 2017 WL 2271491 (May 22, 2017); *see also Perlman v. Bank of Am., N.A.*, 561 Fed.Appx. 810, 813 (11th Cir. 2014) ("As a general matter, a plaintiff is 'not required to negate an affirmative defense in [a] complaint.'"). However, as AlexSam's operative complaint makes clear, Aetna is not covered under the MasterCard Agreement, and thus, Aetna is liable for the MasterCard Accused Products. *See* Dkt. No. 57. Therefore, Aetna's Motion should be denied, and discovery should be allowed.

MTD Opp'n at 17, and the Court explicitly referenced this argument in its order of dismissal, *see* Dismissal Order at 18 ("Finally, AlexSam argues that whether the MasterCard agreement is unambiguous is still at issue. They contend that resolving this ambiguity on a motion to dismiss is improper."); *id.* at 18 n.5 ("AlexSam also notes that '[r]egardless of whether Aetna is a sublicensee for any Licensed Transactions, which AlexSam contends it is not, AlexSam has no affirmative obligation to plead facts negating Aetna's expected (not yet pled) affirmative defense based on the MasterCard Agreement.'"). Therefore, to the extent AlexSam's argument on reconsideration can be construed as the same argument is already has raised to the Court regarding the alleged procedural impropriety of the Court's findings as to express and implied licenses, AlexSam again has offered "no reason for [its] failure to" cite its newly-added case law in its motion to dismiss briefing.[4] *See In re Johns-Manville Corp.*, 759 F.3d at 219.

---

[4] To the extent AlexSam argues that Aetna – not AlexSam – carries the burden of proving the applicability of its license defense, *see* Mot. Reconsideration at 12-13, this does not permit AlexSam to abdicate its responsibility to rebut Aetna's arguments or provide sufficient support for its arguments at every stage of briefing. In relevant part,

On reconsideration, AlexSam revives – and expands – its argument to licensing issues more broadly, suggesting that "[c]ourts routinely deny a defendant's motion to dismiss . . . based on a license defense because it is procedurally improper." Mot. Reconsideration at 12-13. But allowing AlexSam to present this argument now contravenes the purpose of the strict standard applicable to motions for reconsideration. *See Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (a motion for reconsideration is "not a vehicle for . . . presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'"); *see also Universitas Educ., LLC v. T.D. Bank*, No. 15-CV-5643 (SAS), 2016 WL 80210, at *1-2 (S.D.N.Y. Jan. 5, 2016) (noting that a motion for reconsideration is not "an opportunity for making new arguments that could have been previously advanced" and finding as untimely an argument raised for the first time in a motion for reconsideration (internal quotation marks and citations omitted)). In any event, all but one of AlexSam's cited cases were available to AlexSam at the time of its briefing on the motion to dismiss, *see* Mot. Reconsideration at 12-15, and AlexSam has offered no reason for its failure to raise them to the Court earlier in the proceedings.

Moreover, even if the Court were to consider AlexSam's cited cases on the merits, they do not amount to "controlling decisions or data" the Court overlooked, or compel the Court to conclude that its treatment of the licensing issue constitutes "manifest injustice" to AlexSam. As a threshold matter, none of these cases are controlling either in general on this Court or specifically for the proposition that arguments as to licensure could not be resolved on a motion

---

the inquiry on a motion for reconsideration is whether the parties had an opportunity to raise arguments, or present evidence, before the challenged judgment was rendered. *See 4 Pillar Dynasty LLC*, 933 F.3d at 216 ("A Rule 59(e) motion 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'"). AlexSam has shown no reason for why, given its earlier assertion that arguments as to the MasterCard Agreement were "procedurally improper," it could not have provided as support the cases it now provides on reconsideration in that briefing.

to dismiss. *See* Mot. Reconsideration at 12-13. On a closer look, however, these cases also largely are distinguishable on the facts.

For example, in *Panagene, Incorporated v. Bio-Synthesis, Incorporated*, the Eastern District of Texas considered the defendant's arguments that the plaintiffs' claims should be dismissed because they were "barred by a covenant not to sue that resulted from the settlement of an earlier action." No. 2:14-CV34-JRG-RSP, 2015 U.S. Dist. LEXIS 41208, at *2 (E.D. Tex. Mar. 11, 2015). The court did not categorically rule that any challenge based on the covenant was premature, but instead specifically analyzed the plaintiffs' response and the defendant's reply, which "set[] forth a number of positions challenging" the plaintiffs' claims to ultimately conclude that "all of the[se] positions require[d] factual and legal analysis that extends far beyond the face of the pleadings and documents referenced therein." *Id.*

Similarly, in *Luminex Corporation v. Diatherix Laboratories, Incorporated*, the Northern District of Alabama considered the defendants' argument that even if the plaintiffs' patents were not exhausted, they had an "express license" to use certain of Luminex's products. No. 5:13-cv-2054, 2015 WL 12803776, at *8 (N.D. Ala. Sept. 8, 2015). The court in *Luminex*, like the court in *Panagene*, also did not conclude as a general matter that any and all license defenses were premature at the motion to dismiss stage, but specifically analyzed the pleadings to conclude that "[w]hen considered in the light most favorable to the plaintiff, . . . neither the allegations contained in the complaint nor the product documentation attached to the defendants' brief establish that Diatherix had a license to use Luminex's patents for commercial use." *Id.* The court in *Luminex*, in fact, specifically evaluated the terms of the Luminex product's documentation, as well as the license agreement, and concluded "[b]ecause the [relevant] language . . . is ambiguous, it does not support Defendants' motion to dismiss Luminex's patent

infringement claims on the grounds that Diatherix had a license to use the Luminex instrument." *Id.* at *9; *see also id.* ("The Court finds that the language in the product documentation accompanying the instrument and the beads is ambiguous as to the scope of the license granted to Diatherix. Accordingly, the Court denies the defendants' motion to dismiss . . . . on the basis that Diatherix had a license to use the technology."). Similarly, in *MLR, LLC v. Motorola, Incorporated*, No. 2:08-cv-00357, 2008 U.S. Dist. LEXIS 135181, at *8 (E.D. Va. Dec. 15, 2008) the Court concluded that there was a "genuine dispute concerning the proper interpretation" of relevant terms in the license agreement, and found it it "[t]herefore . . . possible that [the plaintiff]'s interpretation of the definition . . . is the correct interpretation."[5]

These cases, therefore, do not stand for the proposition that the Court was not permitted to consider Aetna's arguments as to licensure at this stage of the proceedings.[6] Instead, they support the familiar proposition, stated by the Court in its Dismissal Order, that the Court should view the allegations in the light most favorable to the plaintiff and draw all inferences in the plaintiff's favor, *see Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013), but a plaintiff also must plead "more than a sheer possibility that [a defendant] has acted unlawfully,"

---

[5] The Court is unclear as to AlexSam's intent in citing to *Stanley Works Israel Limited v. 500 Group, Incorporated*, 332 F. Supp. 3d 488, 500-01 (D. Conn. Aug. 1, 2018), a case that discusses ambiguity in contract terms. *See* Mot. Reconsideration at 13. The case, however, reinforces the proposition that a court may, "[a]t the motion to dismiss stage, . . . dismiss a breach of contract claim," but may do so "only if the terms of the contract are unambiguous." *Stanley Works Israel Ltd.*, 332 F. Supp. 3d at 501. Moreover, to the extent AlexSam wishes to revive the issue of ambiguity, this already was raised at the motion to dismiss stage. *See* MTD Opp'n at 17-18.

[6] In *Bayer Cropscience AG v. Dow Agrosciences LLC*, 288 F.R.D. 84 (D. Del. 2012), also cited by AlexSam, the District of Delaware considered the defendants' argument that "its actions in connection with" the use of the plaintiff's technology were "validly licensed, and therefore, it [could not] infringe [the plaintiff]'s patents," and concluded, without an analysis of the contents of the relevant licensure agreement, that the argument was "a factual defense, . . . not an attack on the pleadings," and therefore was "misplaced within the context of a 12(b)(6) motion." *Id.* at 86. To the extent that the *Bayer* court's brief analysis supports AlexSam's contention that resolution of the licensing issue in this matter "is not procedurally proper at this time," Mot. Reconsideration at 14, it does notoutweigh binding precedent on this Court that permits it to grant a motion to dismiss where a complaint does "not permit the court to infer more than the mere possibility of misconduct, [thus] the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678; Dismissal Order at 20-21 (citing *Iqbal*).

and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief," *Iqbal*, 556 U.S. at 678.[7] *See* Dismissal Order at 20-21. The Court acted in accordance with this principle in its Dismissal Order, ultimately concluding that because "[u]nder the plain language of the AMPL, the relevant transactions on multifunction cards provided by Aetna fall within the scope of a sublicensing agreement with MasterCard, and nothing in AlexSam's Second Amended Complaint requires a different result," AlexSam had "raised nothing more than the 'real possibility' of infringement," a level of pleading insufficient to survive a motion to dismiss. *Id.*

AlexSam next argues that "the Court committed error in applying the [*AlexSam, Inc. v.*] *IDT* [*Corp.*, 715 F.3d 1336 (Fed. Cir. 2013)] court's rationale and decision in this case." *Id.* at 14-17. Because, in AlexSam's view, the *IDT* litigation "was limited to activation transactions," those products "are factually distinct" from those at issue here. Mot. Reconsideration at 15. Specifically, AlexSam argues that "while the *IDT* [o]pinion held that IDT's infringement of Claims 57 and 58 was licensed based on its use of the MasterCard Network to activate those gift cards or phone cards," *id.* at 17 (emphasis omitted), Aetna's accused products "are not activated using the MasterCard Network," and "are not activated at a point-of-sale device." *Id.* at 17. AlexSam also argues that the Court erred "in only comparing Claim 57 to Claim 32," and Claim 33 is an "independent claim[]"; in AlexSam's view, the Court erred "in finding that Claim 33 was similar to Claim 57." *Id.* at 15-17.

---

[7] AlexSam also claims that "Aetna has not carried its burden to prove this defense given that the factual statements in the operative Complaint must be credited and viewed in a light most favorable to AlexSam and that Aetna is not licensed under the MasterCard Agreement for one of several possible reasons must be accepted." Mot. Reconsideration at 14. AlexSam, however, raised this argument to the Court in its opposition to the motion to dismiss. *See* MTD Opp'n at 17 ("Under the *Iqbal/Twombly* standard, the Court should accept all of Plaintiff's allegations as true. . . . [A]s AlexSam's operative complaint makes clear, Aetna is not covered under the MasterCard Agreement, and thus, Aetna is liable for the MasterCard Accused Products."). Because a motion for reconsideration is "not a vehicle for . . . securing a rehearing on the merits" or otherwise taking "a second bite at the apple," *Analytical Surveys, Inc.*, 684 F.3d at 52, this argument does not merit reconsideration.

Aetna responds that the Court "did not overlook the *IDT* opinion," and argues that AlexSam has "provide[d] no reason for the Court to revisit [its] old arguments." Def. Opp'n Reconsideration at 6. Aetna also argues that AlexSam's view that the *IDT* court held that the MasterCard Agreement covered only phone and gift cards is "erroneous," because the court "never had occasion to declare that other cards were not covered by the MasterCard License Agreement," and instead held "that the protection of the License extended, not just to 'the entire value chain,' but to 'all parts of the transaction.'" *Id.* at 6-7 (quoting *IDT Corp.*, 715 F.3d at 1346). In Aetna's view, "[u]nder either the amended or unamended version of Section 1.3, the exchange of information involving medical cards and the MasterCard network would be a Licensed Transaction, and Aetna would be part of the entire value chain." *Id.* at 7.

The Court agrees.

The Court already considered the *IDT* litigation both as a general matter and specifically as to whether its holding relating to activation transactions was applicable to the transactions at issue here. *See, e.g.*, Dismissal Order at 19-20 ("Although the case in *IDT Corp.* involved activation transactions, those transactions are similar to these Claims."). Though the Court noted that "Claim 32 contains some of the exact language as Claim 57," *id.* at 20, the Court's consideration encompassed both claims, and referred to the similarity in language between Claims 32 and 57 as an illustrative example rather than the sole basis for its holding. Indeed, the Court explicitly found that the *IDT* litigation's "reasoning should apply here." *Id.*

Furthermore, AlexSam previously raised, at the motion to dismiss phase, the argument that Claims 32 and 33 were not "activation transactions." *See, e.g.*, Tr. Mot. Hrg., ECF No. 95, at 26:16-27:7 (Sept. 8, 2020) ("There are types of debit[] cards that you can buy for an incremental value . . . and you can actually refill them. . . . So it's the activating of that card – right? . . .

These are not issues with respect to claim 32 which involves an entirely different type of card. And nowhere in claim 32 or 33 does the concept of activating or adding value ever appear."); *id.* at 27:11-23 ("[A]ctivating or . . . adding of value, would be covered by this license, but you absolutely cannot extend the license to include other uncovered, unlicensed conduct in the manner in which Aetna is suggesting."); *id.* at 28:16-18 ("But you see . . . there is no mention at all of activating or adding value. It simply isn't conduct that is claimed in claim 32. And looking at claim 33, we see, in fact, that it's not present there either.").

The Court therefore considered – and addressed – both the *IDT* litigation and AlexSam's argument that without activation, the debit/medical services cards at issue are not licensed transactions under the MasterCard Agreement. As a result, AlexSam's disagreement with the Court's analysis of the *IDT* litigation, and the scope of its application of the case to the Court's analysis of Claims 32 and 33, does not merit reconsideration. *See Shrader*, 70 F.3d at 257 ("[A] motion to reconsider should not be granted where the moving party seeks to relitigate an issue already decided.").[8]

Finally, AlexSam argues that "the Court should permit leave to amend with respect to the

---

[8] For these reasons, AlexSam's motion for judicial notice also will be denied. AlexSam argues that the Court should take judicial notice of a letter purportedly from MasterCard to AlexSam dated July 2, 2007. Mot. Judicial Notice at 1. As an initial matter, the letter is not independently verifiable, as it does not bear an official court seal or docket number, *see id.* Ex. 5 at 1-5, and therefore is not a fact that can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned," and does not provide "the necessary information" to take judicial notice, *see* Fed. R. Evid. 201; *see also Richardson v. N.Y.C. Bd. of Educ.*, 711 F. App'x 11 (2d Cir. 2017) ("Under Federal Rule of Evidence 201(b)(2), courts may judicially notice facts that are 'not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." (alterations in original)). Furthermore, AlexSam has not offered any support for its contention that this letter is properly before the Court on a motion for reconsideration. AlexSam has not explained any reason for failing to include the letter in its earlier filings; argued that this letter is new evidence discovered after the Court's order of dismissal; or explained its failure to include or reference this letter in its motion for reconsideration. The Court therefore sees no reason to consider this letter as a "controlling decision[] or data" that the Court overlooked, *Shrader*, 70 F.3d at 257, such that reconsideration is warranted. Moreover, even if this Court were to consider this request for judicial notice as a second motion for reconsideration, such a request would be untimely. *See* D. Conn. L. Civ. R. 7(c) (noting that motions for reconsideration "shall be filed and served within seven (7) days of the filing of the decision or order from which such relief is sought").

MasterCard Agreement." *Id.* at 18 (emphasis omitted). As AlexSam subsequently filed another motion to amend/correct the Complaint, *see* Mot. Amend, the Court will, to the extent AlexSam intended to set forth a separate motion to amend in this filing, ECF No. 104, deny this motion as moot in light of AlexSam's later filing, ECF No. 106.

Accordingly, AlexSam's motion for reconsideration will be denied, and to the extent the motion set forth a cognizable motion to amend, that motion will be denied as moot in light of AlexSam's later motion to amend.

### B.  The Motion to Amend

In the Dismissal Order, the Court permitted AlexSam until October 9, 2020 to "move for leave to file an amended pleading . . . to the extent the deficiencies identified in this ruling can be addressed." Dismissal Order at 47.

AlexSam argues that it has moved to amend under the "Court's permission after it dismissed AlexSam's Second Amended Complaint." Mot. Amend at 3. Though AlexSam's brief does not clearly outline the proposed scope of its amendments, a review of AlexSam's proposed Third Amended Complaint appears to suggest three primary changes: first, the addition of Aetna Life Insurance Company ("Aetna Life") as a defendant, *see* Third Am. Compl., ECF No. 106-1 at 1,[9] which AlexSam alleges is an "alter ego" or "agent" of Aetna; a new allegation that Aetna Life and Aetna ("Defendants") "provided their employees and customers with a multifunction card system that allowed them to use Flexible Spending Accounts ('FSAs'), Health Savings Accounts ('HSAs'), and/or [] Health Reimbursement Accounts ('HRAs') cards," *id.* ¶ 2, allegedly in violation of the 608 patent, *id.* ¶¶ 54-72, 83-137; and the removal of all claims

---

[9] ECF No. 106-1 is the redline version of the Third Amended Complaint.

relating to the MasterCard Network, *see id.* ¶¶ 54-106; 131-36,[10] and AlexSam's request for a declaratory judgment, *see id.* ¶¶ 141-47.

AlexSam argues that its amendment is not futile because it "has adequately pled that Aetna is liable," including that it has "adequately pled" direct, willful, contributory and induced infringement. Mot. Amend at 4-10. AlexSam argues that leave to amend will not prejudice Aetna, as it "already has been given ample time to investigate the allegations in the operative Complaint," and "[a]t this early stage of the case, Aetna should not have to expend significant additional resources to conduct discovery or prepare for trial, if AlexSam's proposed Third Amended Complaint is allowed." *Id.* (emphasis omitted). Finally, AlexSam argues that "the proposed Third Amended Complaint is actually simpler in its scope" than the Second Amended Complaint, as "[t]here are no new causes of action, and some causes of action in the Second Amended Complaint do not appear in the Third Amended Complaint." *Id.* at 11.

Aetna argues that "AlexSam has gone beyond trying to fix the deficiencies in its Second Amended Complaint," specifically by "trying to add an entirely new party-defendant, Aetna Life." Def. Opp'n Amend at 1. In Aetna's view, AlexSam "has failed to offer any good faith basis for the Court to allow the addition of a party after the deadline to add parties passed close to a year ago." *Id.* Aetna argues that "AlexSam has known from the outset, when it brought this case sixteen months ago, that Aetna Inc. and Aetna Life are different entities," *id.* at 5, and argues further that the Court has not granted AlexSam leave to add new parties after the time to do so expired, *id.* at 7. Specifically, Aetna argues that AlexSam's motion to add Aetna Life as a defendant "is subject to Rule 16's stringent good cause standard," which AlexSam has not met, as its motion fails to "explain[] how AlexSam has been diligent in its effort to add a new party,"

---

[10] These citations refer to deleted paragraphs, as numbered in the redlined Third Amended Complaint.

and AlexSam's earlier-filed Complaints "explicitly reference Aetna Life over ten times," *id.* at 7-8. Aetna also addresses the merits of AlexSam's attempts to add Aetna Life, arguing that AlexSam has not plausibly alleged facts that would meet "the legal standard for disregarding the corporate form" to permit "the imposition of alter ego liability." *Id.* at 8-12. Finally, Aetna argues that the proposed Third Amended Complaint "fails to address the Court's [dismissal order]," as its "repackaging of the same old allegations, now made against 'Defendants' collectively, does nothing to clarify who did what" or remedy any of the deficiencies previously identified by the Court.

The Court agrees.

Though the Court permitted AlexSam to move for leave to file an amended pleading, it did so only "to the extent the deficiencies identified in this ruling can be addressed." Dismissal Order at 47. AlexSam's proposed Third Amended Complaint, however, goes well beyond the scope of the deficiencies identified in the Court's ruling, as the nature of the action has entirely changed to focus on an alter ego theory of liability between Aetna and its alleged subsidiary, Aetna Life, who AlexSam seeks to add as a defendant. *See* Third Am. Compl.

Under the operative scheduling order, the deadline for AlexSam to amend the Complaint to add parties without leave of the Court was December 6, 2019. Scheduling Order, ECF No. 39 (Nov. 4, 2019). Because AlexSam's attempt to add Aetna Life out of time would require a modification of the scheduling order, AlexSam's motion is subject to analysis under Rule 16 of the Federal Rules of Civil Procedure. *See Lyddy*, 2008 WL 5117679, at *1 ("In other words, when the court issues a pretrial scheduling order [under] Fed. R. Civ. P. 16 that establishes a time table for amending pleadings, a plaintiff's ability to amend the complaint is governed by Rule 16, not Rule 15(a)."). AlexSam therefore must establish that there is "good cause" to amend

the scheduling order and amend its pleading. *Parker*, 204 F.3d at 340 ("[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause."). To establish good cause, AlexSam must set forth evidence of its "diligence," *id.*; *see also Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 266-67 (2d Cir. 2009); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003), meaning that, despite its diligent efforts, "the applicable deadline could not have been reasonably met," *Sokol Holdings, Inc. v. BMB Munai, Inc.*, No. 05-cv-3749, 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2003). "A party fails to show good cause," however, when the proposed amendment rests on information 'that the party knew, or should have known, in advance of the deadline.'" *Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (quoting *Sokol Holdings, Inc.*, 2009 WL 2524611, at *8); *see also Owens v. Conn. Judicial Branch*, No. 3:17-CV-1451 (KAD), 2018 WL 460972, at *2 (D. Conn. Jan. 17, 2018) (same) (quoting *Williams v. Town of Hempstead*, No. 16CV1992 (ADS) (AYS), 2017 WL 4712219, at *2 (E.D.N.Y. Oct. 18, 2017).

While diligence is the "primary consideration," the Court also may consider other relevant factors, including "whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner*, 496 F.3d at 243. Compliance with Rule 16 "is a threshold matter which may obviate the Rule 15 analysis." *Id.*

AlexSam does not, either in its initial brief or reply, offer any reason for its previous failure to add Aetna Life, or any reason why, despite diligence, the December 2019 deadline to

add Aetna Life as a defendant could not have been reasonably met.[11] On this basis alone, the

Court could decline to consider "the merits of [AlexSam's] proposed amendment." *EMA Fin.,*

*LLC v. NFusz, Inc.*, 509 F. Supp. 3d 18, 37 (S.D.N.Y. Dec. 22, 2020); *see also Ruotolo v. City of*

*New York*, No. 03CV5045 (SHS), 2006 WL 2372236, at *2 (S.D.N.Y. Aug. 16, 2006), *aff'd*, 514

F.3d 184 (2d Cir. 2008) ("A court may deny a motion to amend when the movant knew or should

have known of the facts upon which the amendment is based when the original pleading was

filed, particularly when the movant offers no excuse for the delay."). AlexSam instead argues,

without support, that Rule 16 is "inapplicable" to its motion to amend, "given the Court's Order

giving AlexSam express permission to amend." Amend Reply at 3.

Nothing in the Court's order authorizing the filing of a motion for leave to amend,

however, permitted AlexSam leave to join an additional party defendant, an issue which should

have been resolved by the deadline in December 2019, or to somehow skirt the requirements set

forth in Rule 16 governing the modification of a scheduling order. Indeed, a Rule 16 analysis

should be conducted before evaluating AlexSam's motion under Rule 15. *See, e.g.*, *Premier*

*Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. Aug. 12, 2020) ("[W]hen a party moves

to amend or add a party after the deadline in a district court's scheduling order has passed, the

'good cause' standard of Rule 16(b)(4) . . . applies. A party must meet this standard before a

district court considers whether the party also meets Rule 15(a)."); *see also Parker*, 204 F.3d at

340 ("We now join these courts in holding that despite the lenient standard of Rule 15(a), a

district court does not abuse its discretion in denying leave to amend the pleadings after the

deadline set in the scheduling order where the moving party has failed to establish good cause.").

---

[11] In fact, AlexSam's only reference to Aetna Life in its opening brief is a single sentence, arguing that it "has pled facts that Aetna has 'alter ego' liability for the conduct of its subsidiaries, including Aetna Life Insurance Company." Mot. Amend at 7.

AlexSam knew or should have known of Aetna Life's identity, and potential involvement in this matter, well before the Court dismissed the case, as documents AlexSam appended to each of its original, First Amended, and Second Amended Complaints referenced Aetna Life. *See, e.g.* Compl., Ex. E, ECF No. 1-5 (June 28, 2019); Am. Compl., Ex. C, ECF No. 27-3 (Oct. 4, 2019); Am. Compl., Ex. H, ECF No. 27-8 (Oct. 4, 2019); Second Am. Compl., Ex. C, ECF No. 57-3 (Dec. 6, 2019); Ex. H, ECF No. 57-8 (Dec. 6, 2019); *see also Perfect Pearl Co., Inc.*, 889 F. Supp. 2d at 457 (good cause not met when "that the party knew, or should have known" of the relevant information in advance of the deadline).

The Court also disagrees with AlexSam that the amendment would not prejudice Aetna. In considering prejudice, the Second Circuit has looked at "whether the untimely filing would require the opposing party to make additional expenditures to conduct discovery and to prepare for trial." *United States v. Cohan*, No. 3:11-CV-412 (CSH), 2012 WL 4758142, at *1 (D. Conn. Oct. 5, 2012) (citing *Brown v. Gen. Nutrition Cos., Inc.*, 356 F. App'x 482, 487 (2d Cir. 2009)). Were Aetna Life to be added this juncture, it "would need time to plead, and additional discovery would have to be conducted by all the parties," which would delay this case proceeding to trial in a timely fashion. *Kunajukr v. Lawrence & Mem. Hosp., Inc.*, No. 3:05CV01813 (JCH), 2008 WL 1848897, at *2 (D. Conn. Apr. 25, 2008); *see also Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (undue prejudice may exist where the opposing party would be required to "expend significant additional resources to conduct discovery and prepare for trial" or "the amendment will significantly delay resolution of the dispute"). AlexSam has known, or should have known, each step of the way, that Aetna Life was a potential defendant in this matter; indeed, it "has had more than ample time to bring these individuals and entities into this case."

*Kunajukr*, 20018 WL 1848897, at *2.[12]

The Court therefore will deny AlexSam's motion for leave to amend to add Aetna Life as a party defendant. As AlexSam's proposed Third Amended Complaint refers throughout to "Defendants" – namely, both Aetna Life and Aetna – the Court, will, rather than untangle which portions of the proposed Third Amended Complaint may survive in the absence of Aetna Life as a defendant, permit AlexSam to re-file a proposed Third Amended Complaint that does not name Aetna Life.[13] The Court cautions AlexSam, however, that the scope of this grant is narrow, as any proposed Third Amended Complaint may be filed only "to the extent the deficiencies identified in [the Dismissal Order] can be addressed," and no more.[14]

Accordingly, AlexSam's motion for leave to amend will be denied without prejudice to renewal to the extent that AlexSam can file a Third Amended Complaint, by **August 20, 2021**, that addresses the deficiencies in the Court's Dismissal Order.[15]

## IV.   CONCLUSION

For the foregoing reasons, the Court enters the following orders:

AlexSam's motion for reconsideration is **DENIED**, and to the extent the motion set forth a cognizable motion to amend, that motion is **DENIED as moot** in light of AlexSam's later

---

[12] In any event, given AlexSam's failure to satisfy the diligence prong, its motion to amend to add Aetna Life would be denied. *See Chrebet v. Cnty. of Nassau*, No. 09 CV 4249 (DRH) (AKT), 2014 WL 1836835, at *21 (E.D.N.Y. May 8, 2014) (noting that the absence of prejudice is not alone a sufficient reason to find that good cause exists).

[13] Given the Court's denial of AlexSam's motion for reconsideration, the Court also need not, and does not, address AlexSam's argument that it could "reserve[] the right to accuse Aetna branded MasterCard debit/medical services cards." Mot. Amend at 11 n.2.

[14] AlexSam's motion for leave to amend also should clearly indicate the scope of its proposed amendment and should attach as an exhibit a proposed Third Amended Complaint.

[15] In light of this Order, the Court also will deny without prejudice to renewal Aetna's motion to strike, though it cautions AlexSam that "[a]rguments may not be made for the first time in a reply brief." *Benjamin v. Oxford Health Ins., Inc.*, No. 3:16-cv-00408 (AWT), 2017 WL 77328, at *3 (D. Conn. Feb. 28, 2017).

motion to amend;

AlexSam's motion for judicial notice is **DENIED**;

AlexSam's motion for leave to amend is **DENIED** without prejudice to renewal to the extent that AlexSam can file, by **August 20, 2021**, a motion to amend the Complaint that addresses the deficiencies in the Court's Dismissal Order and includes as an exhibit a proposed Third Amended Complaint;

AlexSam's supplemental motion for leave to amend is **DENIED**; and

Aetna's motion to strike is **DENIED** without prejudice to renewal.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of July, 2021.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE